UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | | |
|---|---|---|
| CHARLES BONNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 22-038-WOB |
| | ) | |
| v. | ) | |
| | ) | |
| KENTUCKY DEPARTMENT | ) | **MEMORANDUM OPINION** |
| OF CORRECTIONS, ET AL., | ) | **AND ORDER** |
| | ) | |
| Defendants | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Charles Bonner is an inmate who was previously confined at the Northpoint Training Center (NTC) in Burgin, Kentucky. Proceeding without a lawyer, Bonner filed a civil rights complaint with this Court. [*See* Rs. 9, 12-1, and 12-2 (which collectively make up Bonner's operative pleading)]. The defendants then moved to dismiss Bonner's complaint [R. 22], Bonner filed a response [R. 24], and the defendants filed a reply brief [R. 32]. Thus, the defendants' motion is now ripe for a decision. For the reasons set forth below, the Court will grant the defendants' motion in part and deny it in part.

According to Bonner's complaint, he was incarcerated at the NTC in early 2021. [*See* R. 9, 12-1]. Bonner further alleges that he is a practicing Rastafarian, and his religious beliefs require him to wear his hair in dreadlocks. [*See id.*]. Bonner, however, claims that, on February 23, 2021, the warden at the NTC issued a memorandum, on Kentucky Department of Corrections (KDOC) letterhead, regarding "searchable hair," which said:

> Effective immediately, Inmates entering/existing the Institution and/or assigned to Restrictive Housing Unit (RHU) must have searchable hair, regardless of length. Braids, corn rolls, dreadlocks etc. are not permitted if they are not searchable. Inmates shall be given the option to remove braids, corn rolls, dreadlocks etc. for a reasonable amount time to do so (30 minutes). If the Inmate refuses to remove

> them, then the hair will be cut using a cell entry team, with video. This is a use of force and must be approved using the normal process.
>
> Inmates, who are currently assigned to RHU, shall not be permitted to have braids, corn rolls, dreadlocks etc. in their hair. If you discover that they have done so, the same process as above will be followed.

[R. 12-2 at 2].

Bonner further alleges that, on April 30, 2021, at approximately 1:00 a.m., prison officials woke him up, ordered him to pack his belongings, and told him he was being transferred to another facility. [*See* R. 12-1 at 3]. Bonner then alleges that some of the officials "informed [him] that he had to have his dreadlocks cut prior to exiting the prison." [*Id.*]. Bonner claims he asked the officials why he had to have his dreadlocks cut, and they responded, "'Because the Warden and Commissioner said so. You read the memo.'" [*Id.* at 4]. Bonner also claims that while he mentioned "that cutting his dreadlocks was against his religion because he is a Rastafarian," the officials simply responded by telling him that "'security overrides religion.'" [*Id.*]. Bonner then says that the officials had his dreadlocks cut and recorded the incident on video. [*See id.*]. Bonner says that he was then transferred to the Eastern Kentucky Correctional Complex (EKCC) in West Liberty, Kentucky. [*See id.*].

Bonner then alleges that, after he arrived at the EKCC, a grievance supervisor there informed him "that he could not file a grievance regarding" what occurred at the NTC since "he was no longer a[ ] resident of" that institution. [R. 24 at 2]. Still, Bonner claims that he "filed an open records request for a copy of the camera footage of his dreadlocks being cut at the [NTC]." [R. 12-1 at 4]. Bonner, however, says that his request was denied. [*See id.* at 5]. Nevertheless, Bonner alleges that he continued to pursue the matter by sending a typed letter to the commissioner of the KDOC, speaking with a KDOC investigator about the incident, submitting another open records request, and completing and filing multiple inmate grievance forms. [*See* R. 12-1 at 5-6;

R. 12-2]. Bonner, however, suggests that his requests for relief were repeatedly rebuffed, with one of his administrative grievances rejected because he was complaining about an incident at "a facility that no longer personally affect[ed]" him and his grievance was "not filed within the five (5) working day time limit on a specific incident." [R. 12-2 at 42].

Eventually, Bonner filed this civil rights lawsuit. [*See* Rs. 9, 12-1, and 12-2]. Bonner named as defendants the KDOC, the commissioner of the KDOC, the warden of the NTC, and multiple NTC employees. [*See id.*]. Bonner asserts a number of federal constitutional and statutory claims, as well as state law claims, and he is seeking money damages. [*See id.*].

The defendants responded to Bonner's complaint by filing a motion to dismiss. [R. 22]. The defendants argue that the Eleventh Amendment bars Bonner's monetary damages claims against the KDOC and the remaining defendants in their official capacities. [*See* R. 22-1 at 7]. The defendants also argue that Bonner's monetary damages claims against the defendants in their individual capacities should be dismissed because he failed to properly exhaust his administrative remedies. [*See id.* at 2-7]. Bonner filed a response in opposition to the defendants' motion [R. 24], and the defendants filed a reply brief in support [R. 32].

The Court has reviewed the parties' submissions and will grant the defendants' motion in part and deny it in part. To the extent that Bonner is seeking monetary damages against the KDOC and the remaining defendants in their official capacities, those claims are indeed barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). Thus, the Court will dismiss those claims with prejudice.

That said, the defendants' remaining arguments regarding administrative exhaustion are unavailing, at least at this early stage in the litigation. To be sure, the Prison Litigation Reform Act makes it clear that "[n]o action shall be brought with respect to prison conditions under section

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory. *See Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). However, the United States Supreme Court has emphasized that the administrative remedies must indeed be "available" to the prisoner. *Ross v. Blake*, 136 S. Ct. 1850, 1858-62 (2016). And, with that in mind, the Supreme Court has highlighted a number "of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859; *see also id.* at 1859-62.

Here, at this early stage in the litigation, there are questions of fact as to whether the administrative exhaustion process was functionally available to Bonner. After all, Bonner alleges that, over his objections, his hair was cut at the NTC on April 30, 2021, and, that same day, he was transferred to a different prison, the EKCC. Bonner then alleges that, after he arrived at the EKCC, a grievance supervisor there told him "that he could not file a grievance regarding" what occurred at the NTC since "he was no longer a[ ] resident of" that institution. [R. 24 at 2]. That claim appears to be consistent with a document which allegedly shows an EKCC assistant grievance coordinator later rejecting one of Bonner's grievances in part because he was complaining about an incident at "a facility that no longer personally affect[ed]" him. [R. 12-2 at 42]. Assuming these allegations are true—that Bonner's hair was cut and that he was then immediately transferred to a different prison where he was told that he could not exhaust his administrative remedies—they, at a minimum, raise questions as to whether the exhaustion process was practically available to Bonner at any point in time. Thus, it would be premature to resolve the exhaustion issue at this early stage in the litigation, though the defendants may renew their arguments at a later time.

In light of the foregoing analysis, it is **ORDERED** as follows:

1. The defendants' motion to dismiss [R. 22] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The defendants' motion to dismiss is **GRANTED** to the limited extent that Bonner's monetary damages claims against the Kentucky Department of Corrections and the remaining defendants in their official capacities are **DISMISSED** with prejudice. Consistent with this decision, the Clerk's Office is directed to **TERMINATE** the Kentucky Department of Corrections as a defendant in this action.

    b. The defendants' motion to dismiss is otherwise **DENIED** without prejudice, though the defendants may renew their exhaustion-related arguments at a subsequent stage in the litigation.

2. Pursuant to 28 U.S.C. § 636(b), this matter is referred to a United States Magistrate Judge to conduct all further pretrial proceedings, including overseeing discovery and preparing proposed findings of fact and recommendations on any future dispositive motions.

3. The Clerk of the Court shall assign this matter to a United States Magistrate Judge.

This 25th day of October, 2022.



Signed By:
*William O. Bertelsman*   WOB
United States District Judge